UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AUAD SERVICES, LLC,

                      Plaintiff,                      21-cv-10219 (PKC)

    -against-

                                                      OPINION AND
                                                      ORDER

PUBLISHERS CIRCULATION
FULFILLMENT, INC.,

                      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Auad Services, LLC ("Auad") brought suit against defendant Publishers Circulation Fulfillment, Inc. ("PCF") by filing a Summons with Notice in the Supreme Court of the State of New York, New York County.  Auad alleges, among other things, that PCF breached certain delivery contracts between the parties and improperly withheld payments due to Auad for delivery services rendered.  PCF removed the action to this Court on the basis of diversity jurisdiction and filed its Answer to the Summons with Notice, wherein PCF denies Auad's allegations and asserts several counterclaims.  PCF now moves to compel arbitration of the pending claims and stay the action, and also seeks costs and attorneys' fees.  For the reasons set forth below, PCF's motion to compel arbitration and stay proceedings will be granted, and PCF will be awarded costs and attorneys' fees in connection with its efforts to compel arbitration, pending submission of evidentiary support for its fee application after a final award is issued by the arbitration panel.

BACKGROUND

Auad initiated this action on October 19, 2021 by filing a Summons with Notice in the Supreme Court of the State of New York, New York County. (Doc 1, Ex. 1 at 6-9 ("Summons with Notice").) The Summons with Notice contains few factual allegations, as is typical for such pleadings. Auad alleges that PCF "without reason or upon the basis of false and fraudulent reasons, unilaterally terminated a Delivery Services Agreement, dated August 5th, 2016 . . . without providing the requisite notice of termination" and thereafter "unilaterally and improperly withheld payments due to [Auad][.]" (Summons with Notice at 3.) Auad brings claims for breach of contract, tortious interference with contract, conversion, and fraud, and demands $375,000 in damages. (Id.)

On December 1, 2021, PCF removed the action to this Court. (Doc 1 ("Notice of Removal").) Removal is premised on diversity jurisdiction, 28 U.S.C. § 1332, as PCF is a Maryland corporation with its principal place of business in Towson, Maryland and Auad is a New York limited liability company with its principal place of business in New Jersey and a sole member, Raphael Fabrette Auad, who is a citizen of New York. (Id. ¶¶ 9-11.)

On December 8, 2021, PCF filed its Answer to the Summons with Notice, which includes several counterclaims brought against Auad. (Doc 7 ("Answer").) Auad's claims against PCF and PCF's counterclaims against Auad both make reference to the terms of two substantially-similar agreements entered into between the parties regarding the distribution of certain newspapers and publications (Doc 16, Ex. 1 (the "Delivery Services Agreements")).

Both PCF and Auad are in the business of arranging for the delivery, distribution and circulation of newspapers and other publications produced by third parties. (Delivery Services Agreements at 1.) On August 5, 2016, the parties entered into the Delivery Services

Agreements, under which Auad agreed to distribute publications to certain areas of New Jersey on behalf of PCF and PCF agreed to pay Auad fees for its services.  (Delivery Services Agreements §§ 1-3.)  PCF alleges that it terminated the Delivery Services Agreements, in accordance with certain terms providing for termination, on September 6, 2019 and October 6, 2019 after "Auad materially breached the [Delivery Services Agreements] because of its complete failure to carry out the deliveries it contracted to perform."  (Answer at 8.)

The Delivery Services Agreements contain identical arbitration clauses.  (Delivery Services Agreements § 10(A).)  In relevant part, those clauses read:  "All disputes between [Auad] and PCF relating to the interpretation, application, enforcement or breach of this Agreement shall be resolved in binding arbitration[.]"  (Id.)  The arbitration clause also contains a provision regarding costs and attorneys' fees, which reads:  "In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award."  (Id.)

DISCUSSION

PCF now moves to compel arbitration and for costs and attorneys' fees in connection with its motion to compel.  Auad has not opposed the motion, and its time to do so has expired.  (Doc 13 at 1.)

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  Accordingly, on such a motion the Court "consider[s] all relevant, admissible evidence submitted

3

by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002), and draws all reasonable inferences in favor of the non-moving party. Nicosia, 834 F.3d at 229.

The principles governing a motion to compel arbitration are set forth under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The Supreme Court has explained that the purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (quoting Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)).

The FAA applies to the claims brought in the Notice with Summons because the described delivery services, contracted for between a Maryland corporation and a New York limited liability company, are comfortably encompassed within the term interstate commerce. See 9 U.S.C. § 1. "The Second Circuit has established a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002); see also JLM Indus., 387 F.3d at 169.

Courts appeal to state law principles of contract formation to determine the threshold question of whether the parties entered into an agreement to arbitrate. Meyer v. Uber Technologies, Inc., 868 F.3d 66, 74 (2d Cir. 2017). Here, section 10(I) of the Delivery Services Agreements provides that it "shall be interpreted in accordance with the laws of the state of

4

Maryland without reference to its conflicts of law provisions." Under Maryland law, a contract is enforceable so long as there is "no fraud, misrepresentation, mistake, undue influence, or fiduciary relation shown to exist[.]" Gardiner v. Gardiner, 200 Md. 233, 240 (1952). "[W]hen the language of the contract is plain and unambiguous, there is no room for construction as the courts will presume that the parties meant what they expressed." Mathis v. Hargrove, 166 Md.App. 286, 319 (2005). Under Maryland contract law there exists a "rebuttable presumption that deliberately prepared and executed written instruments accurately reflect the parties' true intentions." Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, Inc., 738 F.Supp.2d 640, 650 (D. Md. Sept. 14, 2010).

PCF has come forward with uncontradicted evidence that the parties did indeed agree to arbitrate disputes relating to the Delivery Services Agreements. The Delivery Services Agreements contain express, conspicuous and unambiguous arbitration clauses. (Delivery Services Agreement § 10(A).) The Delivery Services Agreements were executed between PCF and Auad and were signed by Thomas D. Foard on behalf of PCF and Raphael Auad on behalf of Auad. (Id. at 11.) Auad does not deny entering into the Delivery Services Agreements, does not allege that its assent was procured through fraud, misrepresentation, mistake or undue influence, and does not otherwise dispute enforceability. Indeed, Auad could not credibly dispute enforceability given that the Summons with Notice expressly references the Delivery Services Agreements as support for Auad's claims against PCF. (See Summons with Notice at 1 ("Defendant without reason or upon the basis of false and fraudulent reasons, unilaterally terminated a Delivery Services Agreement, dated August 5th, 2016 . . . without providing the requisite notice of termination per the Agreement. Defendant thereafter unilaterally and improperly withheld payments due to Plaintiff . . . . The Defendant has no contractual right to

withhold payments due to Plaintiff.").) Accordingly, the first part of the two-part inquiry is met, as the parties agreed to arbitrate disputes relating to the Delivery Services Agreements.

The second inquiry requires analysis of whether the present dispute falls within the scope of the arbitration clause. To determine whether a dispute falls within the scope of an arbitration clause, the Court considers whether the arbitration clause is broad or narrow. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). Here, the arbitration agreement between the parties covers "[a]ll disputes between [Auad] and PCF relating to the interpretation, application, enforcement or breach of this Agreement[.]" (Delivery Services Agreements § 10(A).) Expansive language – such as "all disputes" and "relating to the interpretation, application, enforcement or breach" – renders the arbitration clause broad. "Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" Louis Dreyfus, 252 F.3d at 224 (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)).

Auad, who has not opposed the motion, fails to overcome the presumption of arbitrability. Auad's claims are not collateral to the Delivery Services Agreements because, as previously discussed, Auad's claims in the Summons with Notice expressly rely on the terms and obligations set forth in the Delivery Services Agreements, including Auad's claims that PCF breached the Delivery Services Agreements and failed to make payments owed under the Delivery Services Agreements. (See Summons with Notice at 1.) Resolution of Auad's claims will turn upon the interpretation and application of the Delivery Services Agreements. Accordingly, the second part of the two-part inquiry is satisfied, as Auad's claims fall within the scope of the Delivery Services Agreements' arbitration clause.

The Court will grant PCF's motion to compel arbitration of the claims asserted in Auad's Summons with Notice and the counterclaims asserted in PCF's Answer and will stay the action pending the completion of the arbitration.  WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) ("Under Section 3 of the FAA, 9 U.S.C. § 3, a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.") (internal quotation marks omitted).

PCF also moves for an award of costs and attorneys' fees in connection with its efforts to compel arbitration.  "The general rule in the United States is that each party must pay its own legal fees."  Cob Shipping Canada Inc. v. Trans Mktg. Houston, Inc., 93-cv-0033, 1993 WL 300043, at *6 (S.D.N.Y. Aug. 4, 1993).  "However, it is well settled that '[a]n exception to this rule is the existence of an agreement between the parties that legal fees are recoverable.'"  Id. (quoting Trans–Asiatic Oil, Ltd. S.A. v. UCO Marine Int'l, Ltd., 618 F.Supp. 132, 137 (S.D.N.Y. July 31, 1985)).  Here, PCF claims that it is entitled to costs and attorneys' fees under the express terms of section 10(A) of the Delivery Services Agreements.  Section 10(A) reads in relevant part that "[i]n the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award."  This fee-shifting provision is unambiguous and appears conspicuously within the Delivery Services Agreements.  Auad makes no argument, and there is no evidence to support a claim, that the fee-shifting provision of section 10(A) is not enforceable or otherwise does not apply.

Because Auad "fail[ed] to proceed with arbitration," PCF is "entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration" in this case.

Accordingly, PCF's motion for costs and attorneys' fees incurred in connection with bringing its motion to compel will be provisionally granted, subject to the submission of evidentiary support for its claim of attorneys' fees and costs within 21 days of the arbitration panel's final award. See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166-67 (2d Cir. 2011).

CONCLUSION

Defendant PCF's motion to compel arbitration and stay proceedings pending the outcome of arbitration (Doc 14) is GRANTED. PCF is awarded attorneys' fees and costs in an amount to be determined. PCF shall file with the Court evidentiary support for its claim of attorneys' fees and costs in connection with bringing its motion to compel, including hours expended and hourly rates, within 21 days of the arbitration panel's final award. The parties shall update the Court on the status of the arbitration by March 31, 2023.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 21, 2022